Mr. North, this is the attorney fee case, is that right? Excuse me? This is the attorney fee issue? Yes, ma'am. Proceed. Thank you. We respectfully submit that after the district court entered summary judgment on all three claims, patent, trademark, and copyright, all granted summary judgment in my client's favor on all these grants that it aired when it denied the request for attorney's fees under Section 285 exceptional case. Suppose we reverse in the first case, what does that do to the attorney fee? We seek $151,000 total, but under 285 for the patent case and those that are intertwined, it's only $15,000 that would be separate and non-intertwined for copyright and trademark. And so we believe that this court at this time Would you be a prevailing party if we reversed in the first case? As to the patent claims, I believe we are because they were empty from the beginning. And even if you reverse or send it back to the Ninth Circuit and the Ninth Circuit disagrees with this interpretation of 1127, 1125-114, as to the patent claims under 285, that would not impact the baselessness of those claims as disposed of by the district court. And so I think the issue of whether there's an exceptional case under Section 285 is right for determination by this panel, by this court, even if it believes that clarification by the Ninth Circuit on the trademark issue would be useful. So is your argument that if, as to the trademark issue, we should we have decided it, but if we should for chance decide in their favor that they're entitled to attorney's fees on the trademark issue? No, Your Honor. The reason for that is Why not? I mean, it would be the converse of what you're requesting, would it not? The, well, we believe, I don't believe so, and this is why. We're not simply saying that there should be a grant of fees under the trademark statute, which is interpreted now under octane fitness, and I believe we agree on that. If this court believes that, at a minimum, that there was a good-faith disagreement on whether, what that statute means, 1127, then I don't think that would be a bad-faith application by either side. But you're requesting attorney's fees. Let's say we do think there's a good-faith disagreement, but we decide in their favor. Your, or if we decide on your favor, you say you get attorney's fees. So if we decide on their favor, don't they get attorney's fees? I think that the court would, district court has not evaluated that question under octane fitness of whether, assuming that our reading and the district court's reading of 1127 is wrong, whether that gives rise to something that's worthy of attorney's fees under octane fitness. I don't see how we would lose on the trademark claim that there's a tolerable claim to attorney's fees by you. I mean, surely their theory is a reasonable one, right? I believe that we thought, given the flip-flop in the position that, and given the district court's position, excuse me, Your Honor, that there was a basis there. But given the panel's discussion here, we're willing to give up our claim for attorney's fees on the trademark issue. But again, all but— Are you abandoning this appeal? Is that what you're telling us? No, I'm saying, Your Honor, that of the— Well, you're going to wait and see what happens. What I'm saying, Your Honor, is that there are— You really can't have it both ways? If you pursue this appeal, we'll have to consider whether, in fact, the trademark issue merits attorney's fees either way. Your Honor, I believe that the—again, that there are pieces of this attorney's fees appeal and that the bulk of it, all but $15,000, is directed towards the patent issues and intertwined issues. And so— I think there might be a set-off, but they weren't pursued. They were dropped very early in the case. It looks, from the record, as if where the attorney time was spent was on the trademark issue. Is that correct? That is incorrect, Your Honor. We submitted three detailed declarations, and that showed that the bulk of the fees were on—it was a patent case with a trademark issue, and that's the motion to compel. That's what that was about. And it's only $15,000 of $151,000 where it wasn't this overlapping work where it all could be recovered under $285,000. And so this was really a patent case, and there were some trademark issues attended to it. But the key question from the get-go was, well, when these flyers came out, before the patent issued, whether—and the district court found that there was no evidence whatsoever of a product after the patent issued that— Are you arguing the patent case now? I'm—that portion of the—that is a large—and what I'd say is on the range of this fees petition, that 80 percent of it has to do with the baselessness of the patent issues. And I believe that that is ripe for this Court's determination. And I think even if the Court disagrees with the trademark and rules in their favor on the construction, then the issue would be back for the district court to say, well, was this a position outside of the ordinary, as Octane Fitnesswood says, so that there should be an award under the trademark laws? That hasn't been briefed, has it? No, there has been no claim of attorney's fees based on our position under the trademark laws. And so that issue, even assuming you disagree with our construction, there is no record on that. We do have a complete record on the patent case, and I believe that is appropriate to be queued up today because the issue of the interpretation of whether 1127 applies to 1125 and 1114 is totally distinct from the factual issue raised by the fact that the district court acknowledged that there was not one iota of proof that there was any product issued after the patent came out in December. Well, why couldn't you infer that on information and belief that the offer for sale of an infringing product before the patent issues can support inference that they continued to sell or started to sell a product after the patent issue? I mean, isn't that enough to file a complaint to get the discovery on that? I would say two or three things on that. I think under the objective test, which they agree to, to start a patent case, you need to have a basic claim chart-like analysis under the patent claims. Yeah, but in this case, based on the flyer, it was their product that was illustrated, and there was no question that their product was covered by their patent. But they had to show that there was that product out there after the patent issued. Well, yes, that was, but, you know, on information and belief, one can reasonably say that if you distribute a flyer at a trade show that shows a product, that there is a product someplace ready to be sold. Well, I think that that is... And that's what you then explore in discovery, correct? And so no information came out through discovery of any product. And, in fact, Magistrate Judge Gelderk said regarding this February trade show that there has been no evidence, and this is an open market, so you can see what's going on, and there's no proof. I thought they were saying that they didn't get the discovery that they needed to show that you were selling the product. And they, Judge Gelderk, reviewed what had come out during discovery and disclosures up to that point and said, is there any basis for me to let them get into... So they didn't get the discovery. They did not get into that discovery, but Judge Gelderk said in his opinion that this is an open market with trade shows, so everybody can see what is going on. And initially in their... That's an odd basis for denying discovery. Well, I think there... Is there any authority that you don't get discovery because it's an open market? Well, he contrasted it to perhaps a situation where the development is being done undercover where you have an inability to see what's going on, and so you have some right to get discovery. Well, I think the... Well, here they waived that argument, and the first issues in their appeal on the trademark actually got to the appeal of that... I believe that under octane fitness that there needs to be at some point an objectively based case to keep going. And if the court will reference that we did not seek attorney's fees from the get-go here, and while we believe there needs always to be an objective basis to file a patent case, we understood that Judge Gelderk had some concern, exactly as you're saying. Well, we might see some smoke here, and so there might be some inference that something's going on, but we did not seek attorney's fees until after April of 2016 when it's undisputed that we had approached them and said, we stopped. Once we saw the patent issued, nothing happened. We put it on ice. There was time for initial discovery, and there was nothing, and we said, it is time to stop this case, but they kept going and going, and even after the denial of the discovery ruling, they kept going and going. They didn't take any depositions... Well, they didn't even bother to take the depositions of my clients because their goal has been to stretch this out. At some point... What was the discovery that was denied? They requested discovery into our developmental products as to what we were coming out with in the future, and they did this based on a trade show, and before Judge Gelderk's, and it's in the appendix, there's a picture of that where you can see, actually, it was a changed profile from what was in that advertisement. So the only evidence was that, in fact, we had changed what we were doing, and it's interesting because when they characterized what they saw in February in their own brief, and I'm referring to their brief at page 8, all they could say was that this picture showed a modified but still similar product. Well, what does that mean? We put in our brief that the limitations of their patent claim fill a whole page. So whatever the reasons of the patent aspect, let's talk about the trademark issues that are before us and for which you're requesting attorney's fees, and you say that you're limiting the request to the trademark issue. Is that right? I'm saying that, yes, given the discussion here that we will not be seeking attorney's fees for the trademark portion of the case. You're not seeking attorney's fees for the trademark portion? Correct. Just the patent portion. Just the patent portion. So that's what, 151,000 minus the 15,000 or thereabouts? Yes, sir. And a small portion of that is copyright, too, but I don't think it's worth the time of this Court and of us to parse through that. So we'd agree that we are only seeking here on this separate appeal attorney's fees for the patent portion. So you're abandoning the trademark, perhaps in view of the colloquy that we're having that might have been prudent. However, doesn't that add weight to if, in fact, we should decide that they're correct on the trademark issue, that they're entitled to attorney's fees for the trademark aspect? Your Honor, I would disagree with that because I believe that in the first instance it's up for the district court to apply the octane fitness factors to see if what our argument was outside of the ordinary in arguing for 1127 to apply to 1125, and I suspect that because initially the magistrate judge and the district court judge agreed with our position that they're going to say that, well, maybe now we know the Ninth Circuit disagrees or maybe based on good argument we disagree with it, but I really don't think that there is going to be a finding that our arguments were outside of the ordinary when there is this language in the Ninth Circuit. And so I don't think it's a binary thing where either we win on fees on trademark or they do. I think it's, well, if through this colloquy we agree that it's perhaps nuanced. I hadn't thought so either until I saw your appeal. Let's hear from the other side on this issue and we'll save some more. You have a little rebuttal time left. Okay. Thank you, Your Honor. Mr. Cooper. Mr. Court, one point, just to go directly on what's been discussed here for, as far as I understand, the first time, to divide this case and to make the suggestions that Mr. North was making to you about how you might find for the patent side of the case versus the trademark side. The appellant's opening brief, George Axelrod, talks about how the work in this case is intertwined and recognizes that we've, versus Tupp has recognized that as well. I've never heard the idea from Mr. North until right now or just before that somehow there could be a distinction made here and even if the trademark issue went a different way, somehow there'd be the ability to carve out an exceptional case just under 285 in the patent case. So I just note that, and that's what went on in their opening brief. There were three opinions issued by the court, the district court in this case, on whether the case is exceptional and whether attorney fees should be awarded. And in each of those opinions, the court said no. In each of those opinions, the court applied all the octane fitness factors. There's no evidence anywhere in the record that the court did anything but that. Judge Brown, rather than simply approving Judge Sheldrick's, magistrate Judge Sheldrick's findings and recommendation, wrote her own independent opinion with her own independent basis for why the case was not exceptional under octane fitness. And then again, a reconsideration came back. So the record, I think, is very solid as to no abuse of discretion. Mr. North is not emphasizing abuse of discretion and it's as if almost you could look at this and decide, no, we decide whether it's exceptional. But the point is, is there any, did it meet the standard and is there any recognition in this record that the district court abused its discretion by applying octane fitness? And we suggest that the answer is clearly no, that there is a complete exercise of discretion. There's two key actions that happened in this case that guide all of Verzatop's behavior on patent, trademark, and copyright issues. Seeing the knockoff brochure and email in September and October of 2015, acting reasonably to do what it could to, this is fully in their industry, learn these things, see a picture of your own product and your trademark being advertised by somebody. So they filed a complaint for trademark and copyright infringement and a couple months later, right after their patent issues, filed a first amendment complaint for adding a patent infringement count. A couple months later at a February trade show, see that there's movement by the defendant, Georgia Expo, and there's some other version or some prototype that looks different from the brochure but still is competing. And then we got on our discovery path. The point that Mr. North is noting about April 2016 is six months before the court denied our motion to compel on discovery. We were doing, Judge Dyke, exactly what you suggested. We were trying to get discovery to learn more about what Georgia Expo had been doing since it issued those brochures in September and October 2015. And then as we saw in the February 16 trade show, additional activity, what's the product? We never got to the product. There would have been no reason to take a deposition of 30B6 or other of Georgia Expo until we'd get that information. When in the briefing, Appellee spent some time trying to suggest that the court, and specifically Judge Geldrick, relied on subjective attempt. This is at page 9 of Appellee's opening brief. They have a quote from Judge Geldrick saying, a party's failure to successfully persuade the court on the merits of its position does not render the party's motivation suspect, period. It inappropriately cuts off that full sentence, but it uses that carve-out to talk about how somehow Judge Geldrick's relied on subjective intent. But the completion of that sentence is, does not render that party's motivation suspect, its claims frivolous, or its litigating position objectively reasonable. So again, my point is, throughout, Judge Geldrick's closely followed all the factors of the Octane Fitness case. Judge Brown, then, on her own opinions, did the same thing. I do note, while Georgia Expo, in its brief, is focusing on the patent case, almost completely recognizes, makes no statement as to a frivolous claim as to the trademark. And again, that up till today, I've never heard the idea that somehow there's a carve-out of patent versus trademark. The idea that so much time was spent just on patent and that you could carve-out doesn't make any sense based on what happened in this case. Because of what Georgia Expo chose to do by not releasing the accused product when they clearly were on a path to do it because of our activity, there was a chess game that obviously went on. And on the discovery side, they were successful with that procedure. But that didn't mean that this case blew up and became some 80% of their time on patent issues. It just simply couldn't. And it is inevitably intertwined. This case is about both of these issues because of the facts of this case. I note the Federal Circuit's view engineering standard for infringement. Again, just to point out, Judge Lynn, what you noted, we didn't feel that we mechanically had to do a claim chart when we saw a photograph of our client's product in order to provide the reasonable basis we needed to file that patent infringement complaint. Another part of why this is not an exceptional case, another part of why Judge Brown and Magistrate Judge Sheldricks ruled that way in our favor. And lastly, I note that where Mr. North was talking about a statement that Judge Sheldricks made at one point in, I believe it was through discovery, about how nothing had happened since the brochure. In his findings and recommendation, Judge Sheldricks notes, furthermore, in February 2016, after its patent issue, Versatop became aware that Georgia Expo was offering some form of prototype coupler product. So the point, again, from Versatop's reasonable activity when it first learned about these September and October 2015 brochure and email, filed a complaint, a First Amendment complaint, went to a trade show, was pursuing evidence to show that this knockoff brochure was really, the intent was there, and they wanted to see what was happening. And unfortunately, we were unable to get that. But that does not make this some type of exceptional case under a patent or a treatment law. Thank you. Mr. North, you have a couple of minutes for rebuttal. Thank you, Judge Newman. Don't we have a situation here where your attorneys feel the appeal on the trademark issue is frivolous? No, Your Honor. Why not? Because Carl Stortz, Ninth Circuit, has applied. The question on the attorney's fees. Why? Are you suggesting their position on the trademark issue is so frivolous that you should get attorney's fees from them? That strikes me as itself a frivolous proposition. I would disagree because they started out applying the same tests that we're applying. And so by their own conduct, they said it's reasonable to apply 1127 to 1125. That is the position they took before the magistrate judge. Their position about the construction statute is so unreasonable that attorney's fees could be awarded? That seems like a very difficult rule of thumb. Well, I believe under the authority that we've set forth and given the findings of the magistrate judge and the district court that, especially given their changes in position when they had lost, that is emblematic of the fact that it was a good faith, reasonable application and that the fact that they changed it shows that it was a position that wasn't worthy of support. And indeed, I come back to what they've been arguing. They never cite Rescue Com, but they've been trying to adopt the Rescue Com argument throughout without letting this court know that. And I believe that, therefore, for us to challenge that conduct on appeal is not a frivolous appeal on that, Your Honor. That's our view. And we believe, given this discussion, that we will not press on that. But I think the corollary is not that our seeking fees on that portion of the total amount is frivolous by itself. If I may quickly loop back on the patent stuff and then I'll close my book. There is no evidence in the record but that... Is this in the briefs about the patent question? Let me just see if there's one thing that was not there and I will address that only if that's acceptable. All I would close with, thank you for the extra time, Your Honor, is that the course of conduct was they did not respond to summary judgment on copyright. They did not object on patent. They did not appeal patent. They changed their trademark only at the district court. They dropped one aspect of their appeal, that is, of the discretionary order here. And so we've had to do a lot of work about what turns out to be nothing. And for these reasons, thank you, Your Honors, we believe that it's appropriate here today under the octane fitness to say that at least the patent case never had a basis after the patent issue and we shouldn't have had to spend money defending that. We appreciate your time today. Thank you. Thank you. Thank you both. The case is taken into submission.